**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
DINO ANTOLINI,                                        Hon. Katherine Polk Failla

                         Plaintiff,

        -against-                                    Case No. 1:19-cv-7385
                                                **OPPOSITION TO PLAINTIFF'S**
N CORPORATION, NICHOLAS S. PRITZKER,   **MOTION FOR LEGAL FEES**
SHIYANG HUI and TIPSY SHANGHAI
RESTAURANT MANAGEMENT INC.,

                                Defendants.
-------------------------------------------------------------X

    Oliver Zhou, attorney for defendants Tipsy Shanghai Restaurant Management Inc., Shiyang Hui, N Corporation, & Nicholas S. Pritzker (hereinafter "Lee Defendants"), affirms the following in opposition to the Plaintiff's Attorney's Motion for his legal fees and costs in connection with the above captioned matter:

## STATEMENT OF FACTS

1.     The plaintiff's attorney filed a motion requesting the Court to order the defendants to pay for his attorney fees of $2,340.00 at the hourly rate of $450.00 on or about April 24, 2020. He attached his time sheet to support his claim. However, he has not provided any retainer agreement negotiated between him and the plaintiff; neither did he offer any other evidence that the plaintiff agreed to pay him $450.00 per hour in his ADA lawsuit. Neither did he offer any sufficient proof that he has been hired by the plaintiff in this ADA lawsuit. In addition, he also submitted the Discovery Deficiency Letter for the defendant to produce further documents as directed by the Judge.

2.     The plaintiff's attorney has further provide a Letter of Discovery Deficiency claiming that save the Income Tax Return of 2018, the defendants have not answered the remaining 34 questions, among others. However, the defendants have answered each and every question

contained in the Plaintiff's Interrogatory and produced more than two hundred pages of documents as requested by the plaintiff's attorney, as shown by the attached Exhibit 1 and Exhibit 2. Therefore, the defendants have complied with the plaintiff's discovery request either fully or substantially in good faith. The plaintiff attorney's claim of discovery deficiency is just false without any factual basis and merit.

## LEGAL ANAYSIS

3.      The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.,* became law in 1990. The primary objective of this Act is to prevent discrimination against Americans with disabilities. In order to achieve this goal, Title III of the ADA, 42 U.S.C. § 12181, *et seq.,* requires the removal of structural barriers in existing public accommodations "where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). *See also* 28 C.F.R. § 36.304 (2004) Where removal of the barrier is not readily achievable, the facility must provide access "through alternative methods if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(A)(v).

4.      To enforce Title III, the ADA provides both a private right of action, 42 U.S.C. § 12188(a), and a right of action for the Attorney General, 42 U.S.C. § 12188(b). While the Attorney General may seek monetary damages on behalf of an aggrieved party, 42 U.S.C. § 12188(b)(2)(B), the only remedies available under the private right of action are injunctive relief and the recovery of attorneys' fees and costs. 42 U.S.C. § 12188(a)(1); 42 U.S.C. § 2000a–3(a). By providing different remedies for public and private enforcement, Congress clearly demonstrated its intent to prevent private plaintiffs from recovering money damages under the ADA. *American Bus Ass'n v. Slater,* 231 F.3d 1, 5 (D.C.Cir.2000).

5.      However, some plaintiffs and their attorneys have found a way to circumvent the will of

Congress by seeking money damages while retaining federal jurisdiction. The ability to profit from ADA litigation has given birth to what one Court described as "a cottage industry." *Rodriguez v. Investco, L.L.C.,* 305 F.Supp.2d 1278, 1280–81 (M.D.Fla.2004). The scheme is simple: an unscrupulous law firm sends a disabled individual to as many businesses as possible, in order to have him aggressively seek out any and all violations of the ADA for a targeted business establishment. Then, rather than simply informing a business of the violations, and attempting to remedy the matter through "conciliation and voluntary compliance," *id.* at 1281, a lawsuit is filed, requesting damage awards that would put many of the targeted establishments out of business. Faced with the specter of costly litigation and a potentially fatal judgment against them, most businesses quickly settle the lawsuit. The result of this scheme is that "the means for enforcing the ADA (attorney's fees) have become more important and desirable than the end (accessibility for disabled individuals)." *Brother v. Tiger Partner, LLC,* 331 F.Supp.2d 1368, 1375 (M.D.Fla.2004). Serial plaintiff, like Hurley, serves as "professional pawn[s] in an ongoing scheme to bilk attorney's fees." *Rodriguez,* 305 F.Supp.2d at 1285. It is a "type of shotgun litigation [that] undermines both the spirit and purpose of the ADA." *Brother,* 331 F.Supp.2d at 1375. Faced with the specter of costly litigation and a potentially fatal judgment against them, most businesses quickly settle the matter.

6.  In deciding whether or not to restrict a litigant's access to the courts, "[u]ltimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Safir v. United States Lines, Inc.,* 792 F.2d 19, 23 (2nd Cir.1986). In doing so, the Court should look to five factors: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant

have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. *See id.*

7.      One important factor to be considered is the litigant's motive in bringing the lawsuit. The ADA itself allows private plaintiffs to sue for injunctive relief, and to recover their attorneys' fees and costs. It does not allow for any award of money damages to a private plaintiff. Clearly, raising multiple claims, by itself, is not unethical or vexatious. However, it is consistent with an overall pattern of behavior that demonstrates plaintiff's motivation is, ultimately, to extract a cash settlement. The threat of significant money damages is a much more effective inducement to settle than merely requesting a court order to make "readily achievable" repairs. And that threat appears to be working.

8.      The Court has discretion to issue an award of attorneys' fees to the prevailing party to an action brought under the ADA. *See* 42 U.S.C. § 12205 ("[i]n any action or administrative proceeding pursuant to [the ADA], the court or agency, *in its discretion,* may allow a prevailing party ... a reasonable attorney's fee, including litigation expenses, and costs.") *see also* 42 U.S.C. § 1988 (providing reasonable attorney's fees for prevailing party in various civil rights actions, including ADA cases). Thus both the statutory and case laws support the notion that federal district courts have broad discretion to determine a fee award, *E*Trade Fin. Corp. v. Deutsche Bank AG,* 374 F. App'x 119, 124 (2d Cir.2010).

9.      The federal case law developed in the 2nd Circuit regarding the legal fee award starts from the inquiry of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany &

Albany Cty. Bd. of Elections, 522 F.3d 182, 186 (2d Cir. 2008) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); See also Stanczyk v. City of New York, 752 F.3d 273, 284 (2d Cir. 2014). The underlying rationale is the presumption of reasonable fee, Arbor Hill, 522 F.3d at 183, and is commonly referred to as the "lodestar." The lodestar figure "includes most, if not all, of the relevant factors constituting a reasonable attorney's fee," Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 553 (2010). However, a federal court retains its discretionary power to modify or even deny the legal fee application ensure that it represents a reasonable fee and incorporates important or unique aspects of the case, see, e.g., Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992).

10.     The criteria to determine whether an attorney's hourly rate is reasonableness. The applying attorney bears the burden to produce satisfactory evidence that his requested rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984); accord Savoie v. Merchants Bank, 166 F.3d 456, 463 (2d Cir. 1999). See also *De La Cruz Moreno v. Happy Angel Nail Spa Inc*., No. 15-CV-10078, 2019 WL 2438966, at *10 (S.D.N.Y. June 12, 2019)

11.     The court usually follows two cases to analyze the reasonableness of legal fees. To determine an appropriate hourly rate, Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 186 (2d Cir. 2008) directs that a court engage in the following process:

> [T]he district court, in exercising its considerable discretion, [is] to bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the

5

case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case.

522 F.3d at 190.

12.     In addition, the court should also incorporate the "Johnson factors" laid out in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) to evaluate any legal fee application such as:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Arbor Hill, 522 F.3d at 186 n.3 (citing Johnson, 488 F.2d at 717-19).

13.     As a further elaboration, *Arbor Hill* specifically identifies the following factors to be considered in determining what a reasonable, paying client would be willing to pay:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Id. at 184.

14.     More importantly, *Arbor Hill* holds that a court must step into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." 522 F.3d at 184. In other words, whether the attorneys on the case properly command the rates they

seek in the marketplace is not dispositive of the rate that they are to be awarded. Rather, Arbor Hill demands that the court must determine the cheapest hourly rate an effective attorney would have charged." O.R. v. New York City Dept. of Educ., 340 F. Supp. 3d 357, 364 (S.D.N.Y. 2018).

15.     Upon determining the appropriate hourly billing rate, the court calculates the hours reasonably expended. *See Gierlinger v. Gleason,* 160 F.3d 858, 876 (2d Cir.1998). The court examines contemporaneous time records that identify, for each attorney, the hours expended on a task, "with a view to the value of the work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.,* 109 F.3d 111, 116 (2d Cir.1997); *see also Scott v. City of New York,* 643 F.3d 56, 57 (2d Cir.2011). Moreover, the court can make reductions where the stated number of hours is greater than what should have been required for the work produced. *See Seitzman v. Sun Life Assurance Co. of Canada,* 311 F.3d 477, 487 (2d Cir.2002).

16.     The facts in the case at bar reveals that plaintiff has filed sixteen (16) ADA lawsuits against various businesses and entities in the Southern District Court of New York, i.e., Antolini Dino v. Morgenstern, et al 1:19-cv-04938, Antolini Dino v. Wert et al, 1:18-cv-04055, Antolini v. 75 & 81 Orchard Associates, LLC, et al, 1:19-cv-05894 (LGS), etc. Exhibit 3. All these cases are filed by Mr. Finkelstein, and at least one case was dismissed by Judge Shofield because Mr. Finkelstein could not provide sufficient proof that the Plaintiff Antolini hired him to launch these lawsuits. Exhibit 4. The plaintiff attorney has not so far provided any proof that he was hired by the plaintiff yet. His ADA filings might appear meritorious on their surface when examined individually. However, his vexatious nature is revealed only when viewed in the aggregate. Therefore, the plaintiff is a vexatious litigant whose ultimate goal is to extort various defendants for money damage and legal fees, or he might fall into the victim of his attorney as well.

17. More serious is that the plaintiff's claim of the defendants failed to answer his interrogatory and produce documents according to his document production request is flatly false. As the facts revealed in the present case, the defendants produced more than two hundred pages to respond to his document production request, including the landmark status, photos of the restaurant and its surroundings, the lease, real estate tax bills, bank statements and federal income tax returns. However, the plaintiff's attorney still submitted false report to mislead the court regarding the alleged discovery deficiency of the defendants while turning a blind eye to these documents produced. The plaintiff's attorney here simply tried to extort the defendants for his own pecuniary benefits at the expense of the plaintiff, assuming the plaintiff's attorney did obtain the plaintiff's consent to represent him in this legal action.

18. One critically important factor in the present case is that the plaintiff's attorney has not provided his Retainer Agreement he signed with the plaintiff regarding his legal representation of the plaintiff and the hourly rate that the plaintiff agrees to pay him. Nowhere in this action did the plaintiff's attorney provide the veritable information and documents such as retainer showing that the plaintiff has officially hired him to launch lawsuits against various businesses and that his hourly rate was set forth in the retainer agreement.  The plaintiff's attorney made very general and broad claim that the court should grant him the attorney fees at the hourly rate of $450.00 per hour, given his extensive experience in the field. He further tried to justify his rate of $450.00 by stating that the attorney hourly rate is ranged from $400.00 to $600.00 per hour, granted by the Judges of the Southern District Court of New York. However, he has not provided any quantitative statistical data and its analytics as to why he deserves this rate, neither did her differentiate the specific tasks he performed at different time period and its different nature, let alone he incorporated the Arbor Hill and Johnson Factors into his ridiculous claim of $450.00

hourly rate for any task he has ever performed.

19. However, such generalized assertion of hourly rate is neither fair nor acceptable because it was only and fully based upon his self-serving statement without any factual substantiation, given the fact that he has filed over three hundred (300) ADA cases at a number of federal courts, and that he has churned out all these purported complaints, motions, interrogatories and documents production as an assembly line of a mass production company. All these purported legal productions require very little time and sophisticated legal skills as claimed by the plaintiff's attorney. By examining his time sheet under the Arbor Hill and Johnson Factors, his assertion of $450.00 per hour is unreasonable and must be denied.

20. Equally important, the plaintiff's attorney should really provide his pro bono service to the plaintiff if he is trying to right the wrong discrimination against the disabled citizens such as the plaintiff, under the legal framework of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.,* since the primary objective of this Act is to prevent discrimination against Americans with disabilities. The ADA is a testament to this country's effort to protect some of its most vulnerable citizens. It is one of the most significant federal statutes that was born out of this nation's Civil Rights movement and was enacted to ensure that disabled individuals have equal and safe access to the same benefits and accommodations as every other American.

21. However, a troubling reality is that the plaintiff's attorney used the plaintiff to file over a dozen ADA cases against the restaurants and other public establishments in this district court under the name of its lofty goal to get equal and safe access to these restaurants like every other American. The motive behind these ADA cases of the plaintiff might have the effect of being less about ensuring access for those with disabilities and more about lining the plaintiff counsel's

pockets, as showed by the criminal complaint filed by the U.S. Attorney against the plaintiff's counsel for his fraudulent activities in the case at bar.

22. Another critically important point is that the retainer agreement between the plaintiff and his attorney can show that the plaintiff did retain his attorney in this matter, given the fact that the plaintiff's attorney has been arrested and criminally indicted by the U.S. Attorney for his fraudulent representation of his ADA clients. Without the bona fide hourly rate negotiated between the plaintiff and his attorney in an arms-length transaction, the court could not have a reasonable basis to determine what the reasonable rate is for the plaintiff's attorney other than a pure guess.

23. Moreover, plaintiff's deficiency letter of discovery is very vague without any specific and detailed requirements as to what exactly he is looking for because he mass produced these interrogatory questions for his 300 hundred cases. His interrogatory and document production requests do not provide specific, detailed and particularized statement for each case, and they are overbroad, vague and confusing. Under this type of requests, the defendant need either to ask the plaintiff's attorney to clarify, which we failed to do it so far, or the intervention from the court to clarify all these broad, vague and confusing questions so that the defendants could answer his interrogatory and produce documents accordingly.

24. It is also worth pointing out that the plaintiff attorney inflated the time he spent on many tiny task and items he entered, such as his "0.4", "0.7" to review emails and review files on September 15, 2019 and December 12, 2019 and"1.2" time entries he made on February 28, 2020 respectively. It is absolutely outrageous and absurd that the plaintiff attorney needs to charge $450.00 for this type of assembly workshop practice. It is neither reasonable nor comparable to the trade in other similarly situated ABA cases, given the purported noble nature

of the ABA legislation.

25.	The foregoing facts and legal analysis indicate that the defendants have complied with the plaintiff's discovery request fully or substantially in good faith, and that the plaintiff attorney's claim for legal fee has no factual and legal basis to support it. WHEREFORE the defendants respectfully request that the court deny plaintiff attorney's application in its entirety for legal fees and costs, and such other and further relief as the Court deems equitable and just.

Dated:	New York, New York
        April 30, 2020.

>	Yours,
>	/s/Oliver Zhou, Esq
>	Law Offices of Oliver Zhou
>	Attorney for Defendants Tipsy Shanghai, et al
>	100 Bowery, Suite 300
>	New York, NY 10013
>	Tel: (212) 226-9442
>	Email: Ozhoulaw888@gmail.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DINO ANTOLINI,                                              Hon. Katherine Polk Failla

                Plaintiff,

      -against-                                 Case No. 1:19-cv-7385
                                                            **AFFIRMATION OF**
N CORPORATION, NICHOLAS S. PRITZKER,                        **SERVICE**
SHIYANG HUI and TIPSY SHANGHAI
RESTAURANT MANAGEMENT INC.,

                Defendants.
-------------------------------------------------------------X

I hereby certify that a true and correct copy of the foregoing has been furnished by U.S. mail, the 4th day of May, 2020 to Stuart H. Finkelstein, Esq. FINKELSTEIN LAW GROUP, PLLC, 338 Jericho Turnpike, Syosset, New York 11791 the address designated for that purpose by depositing true copy of same enclosed in one postage paid properly addressed wrapper, in a post office-official depository under the exclusive care and custody of the United States Postal Service within New York State and his email finkelsteinlawgroup@gmail.com and SF@Finkelsteinlawgroup.com.

                By:_/s/Oliver Zhou_____
                Oliver Zhou, Esq.
                Law Offices of Oliver Zhou
                Attorney for the Defendants,
                100 Bowery, Suite 300
                New York, NY 10013
                T: (212) 226-9442 (O)
                Email: ozhoulaw888@gmail.com

Dated: May 4, 2020.