UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DINO ANTOLINI,

                Plaintiff,

          -v.-

N CORPORATION, NICHOLAS S.
PRITZKER, SHIYANG HUI, and
TIPSY SHANGHAI RESTAURANT
MANAGEMENT, INC.,

                Defendants.

19 Civ. 7385 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

      The Court has already imposed sanctions against Defendants for their repeated failures to abide by the Court's discovery orders (Dkt. #39), and explained why it believes that these sanctions should be imposed on Defendants' former counsel, Oliver Zhou, for his misrepresentations to the Court, *see Antolini* v. *N Corp.*, No. 19 Civ. 7385 (KPF), 2020 WL 5089442, at *2-3 (S.D.N.Y. Aug. 28, 2020). Before the Court now are Mr. Zhou's submission as to why he does not believe he should be sanctioned (*see* Dkt. #74-75), and Plaintiff's petition for attorneys' fees (*see* Dkt. #42, 57). For the reasons discussed below, the Court finds that sanctions should be imposed against Mr. Zhou, and grants Plaintiff's petition for fees in part.

## BACKGROUND[1]

By Order dated March 27, 2020, the Court imposed sanctions against Defendants for their repeated failures to abide by the Court's discovery orders. (Dkt. #39). The Court granted sanctions in the form of requiring Defendants to pay the attorneys' fees that Plaintiff's counsel had billed in connection with each of Plaintiff's letter motions for sanctions, and ordered Plaintiff to file an accounting of hours billed. (*Id.*). On June 23, 2020, in light of additional proceedings and filings devoted to the issue of Defendants' continued lack of compliance with their discovery obligations, the Court granted Plaintiff's motion to submit a revised fee petition. (Dkt. #54). By Order dated August 28, 2020, the Court provided "specific notice" to Defendants' former counsel, Oliver Zhou, that the Court believed his improper conduct — stating to the Court that he represented Defendant N Corporation when he did not in fact have any contact with that party — gave rise to the sanctions imposed against Defendants, and set a briefing schedule for Mr. Zhou to be heard on the matter. *Antolini*, 2020 WL 5089442, at *1-2. Mr. Zhou submitted an affirmation in response to the Court's Order on September 8, 2020 (*see generally* Zhou Aff.), and Plaintiff filed a response on September 10, 2020 (Dkt. #76).

---

[1] Mr. Zhou filed the same affirmation on the docket twice in response to the Court's August 28, 2020 Order. (*See* Dkt. #74-75). For ease of reference, the Court cites to Mr. Zhou's affirmation using the convention "Zhou Aff. ¶ [ ]"; and refers to the transcript of the January 28, 2020 conference as "Hr'g Tr." (Dkt. #88).

At the outset of Mr. Zhou's involvement in this case, he affirmatively represented to the Court that he was entering the case as counsel for N Corporation, one of three Defendants who have appeared in this case to date:

> THE COURT:  You're coming into this case with some open discovery issues.  I don't want to know about privileged communications that you may have had with the defendants in this case, but is it your understanding that you would be coming in and representing all three defendants in this case?
>
> MR. ZHOU: … Yes, your Honor[.]

(Hr'g Tr. 17; *see also id.* at 18).  He further reassured the Court that he would be communicating with all three of his clients — including N Corporation — to address discovery disputes that were already festering in January 2020, when he first appeared on behalf of his new clients:

> THE COURT:  … I would like you to communicate to your clients that it is of great concern to me that they have not been forthcoming with their discovery responses.  And I'm sure you can advise them of the range of sanctions that I have available to me if they don't.
>
> MR. ZHOU:  Yes, your Honor.  I will certainly advise them, and I will certainly report to you for any discovery issue if we cannot resolve between myself and Mr. Finkelstein.  Then I will let your Honor know what's the problem of the discovery, what's the barriers, what's the issues, and what's the status.  And then, based upon the facts or the joint letter we submit, between Mr. Finkelstein and I, and then you, Judge, your Honor, can make an informed decision as to the status and the problem and the completeness of the discovery.

(*Id.* at 21).  Indeed, in reliance on Mr. Zhou's representations, the Court extended discovery to allow Defendants another chance to comply with their discovery Orders.  (Dkt. #32).  Yet, over the course of the next four months,

3

"Mr. Zhou continued, baselessly, to hold himself out as N Corporation's counsel despite having no communication with any N Corporation agent, receiving no documents or other discovery from N Corporation, and failing to investigate or confirm whether he in fact represented N Corporation." *Antolini*, 2020 WL 5089442, at *2. As a result, Defendants violated multiple discovery orders, Plaintiffs were prevented from getting discovery from N Corporation, and the parties and the Court wasted nearly half a year litigating needless discovery disputes.

## DISCUSSION

**A.   Sanctions Against Mr. Zhou Are Justified**

The Court has "inherent power to supervise and control its own proceedings and to sanction counsel or a litigant for bad-faith conduct." *Sussman* v. *Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995); *see also* 28 U.S.C. § 1927 ("Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."); *Madison 92nd St. Assocs., LLC* v. *Marriott Int'l, Inc.*, No. 13 Civ. 291 (CM), 2013 WL 5913382, at *12 (S.D.N.Y. Oct. 31, 2013), *aff'd sub nom. Boies, Schiller & Flexner LLP* v. *Host Hotels & Resorts, Inc.*, 603 F. App'x 19 (2d Cir. 2015) (summary order) ("The purpose of § 1927 is to ensure that those who create unnecessary costs also bear them."). Generally speaking, "[i]mposition of sanctions under a court's inherent powers requires a specific finding that an attorney acted in bad faith," and such sanctions "are

4

appropriate only if there is clear evidence that the conduct at issue is [i] entirely without color and [ii] motivated by improper purposes." *Wolters Kluwer Fin. Servs., Inc.* v. *Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). Similarly, before imposing sanctions under 28 U.S.C. § 1927, a court "must find clear evidence that [i] the offending party's claims were entirely meritless and [ii] the party acted for improper purposes." *Revson* v. *Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000) (internal quotation marks omitted) (quoting *Agee* v. *Paramount Commc'ns Inc.*, 114 F.3d 395, 398 (2d Cir. 1997)); *see generally Sorenson* v. *Wolfson*, 683 F. App'x 33, 37 (2d Cir. 2017) (summary order) (discussing sanctions imposed under the inherent powers doctrine and 28 U.S.C. § 1927).

Before a district court may impose sanctions directly against an attorney, the Second Circuit has explained that, "under basic principles of due process":

> [a]n attorney whom the court proposes to sanction must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter, and must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges.

*Wilson* v. *Citigroup, N.A.*, 702 F.3d 720, 725 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Sakon* v. *Andreo*, 119 F.3d 109, 114 (2d Cir. 1997)).

Following the Second Circuit's directive, by Order dated August 28, 2020, the Court explained that it was considering the imposition of sanctions pursuant to its inherent powers and/or 28 U.S.C. § 1927. Additionally, the

Court gave Mr. Zhou specific notice of the conduct alleged to be sanctionable, explaining that it believed that:

> [t]he root cause of Defendants' repeated failure to comply with the Court's discovery orders is Mr. Zhou's bad faith misrepresentations to the Court that: (i) he represented N Corporation; (ii) he was in contact with N Corporation in the course of his purported representation of that party; and (iii) he was diligently working with representatives from N Corporation to comply with N Corporation's discovery obligations. These misrepresentations prevented Plaintiff from getting discovery from N Corporation; caused Defendants to violate multiple discovery orders issued by this Court; caused Plaintiffs to seek sanctions; and are ultimately to blame for N Corporation's failure to comply with the Court's discovery orders to this day.
>
> Specifically, over the course of nearly five months, Mr. Zhou continued, baselessly, to hold himself out as N Corporation's counsel despite having no communication with any N Corporation agent, receiving no documents or other discovery from N Corporation, and failing to investigate or confirm whether he in fact represented N Corporation. Indeed, it strains credulity to believe that Mr. Zhou could claim in good faith to represent a client for nearly five months without ever speaking to the client, especially during active discovery. Even worse, Mr. Zhou's continued assertions to the Court and Plaintiff that he was in contact with officials from N Corporation to produce discovery — in response to multiple discovery orders from this Court — were plainly in bad faith given that Mr. Zhou had not, at any point, spoken to any agent of N Corporation about discovery or any other issue. Furthermore, Mr. Zhou's five-month-long misrepresentation greatly disrupted this case, delaying discovery for several months and forcing the Court and the parties to waste time and resources on motions to compel discovery and to impose sanctions.

*Antolini*, 2020 WL 5089442, at *2.

On this record, the Court believes it is clear that Mr. Zhou "acted 'without a colorable basis,'" *Boies, Schiller & Flexner LLP*, 603 F. App'x at 20 (quoting *Enmon* v. *Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012)), in claiming that "(i) he represented N Corporation; (ii) he was in contact with N Corporation in the course of his purported representation of that party; and (iii) he was diligently working with representatives from N Corporation to comply with N Corporation's discovery obligations." *Antolini*, 2020 WL 5089442, at *2. However, it is less clear that Mr. Zhou acted with "improper motive" or for "improper purposes," as is typically required for a showing of bad faith in this context. *See Scivantage*, 564 F.3d at 114; *Revson*, 221 F.3d at 79.

Even so, "the inherent power of the district court also includes the power to police the conduct of attorneys as officers of the court, and to sanction attorneys for conduct not inherent to client representation, such as, violations of court orders or other conduct which interferes with the court's power to manage its calendar and the courtroom without a finding of bad faith." *United States* v. *Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000). Thus, while a showing of bad faith is required when an attorney engaged in conduct "of the sort that is normally part of the attorney's legitimate efforts at zealous advocacy for the client," *Seltzer*, 227 F.3d at 40, the Court may impose sanctions on an attorney even without a specific finding of improper motive "where a lawyer negligently or recklessly fails to perform his responsibility as an officer of the court,"

*Palmer* v. *Simon's Agency, Inc.*, No. 20-1516, — F. App'x —, 2020 WL 6387333, at *1 (2d Cir. Nov. 2, 2020) (summary order) (citing *Seltzer*, 227 F.3d at 39).[2]

The record here demonstrates that Mr. Zhou failed to perform his duty as an officer of the court. As noted above, from the beginning of his involvement in this case, Mr. Zhou told the Court that he represented N Corporation. (*See* Hr'g Tr. 17-18). He further told the Court that he would work diligently with N Corporation and the other Defendants to comply with the Court's discovery orders. (*See id.* at 18-22). Yet, Mr. Zhou did not speak to a single N Corporation representative until May 26, 2020 — the same day he was instructed by the Court to provide proof that he did in fact represent N Corporation. (*See* Zhou Aff. ¶ 5; Minute Entry for May 26, 2020). Furthermore, Mr. Zhou did not inquire into whether N Corporation wanted him as counsel in this matter until June 3, 2020. (*Id.* at ¶ 7). In the interim, Plaintiff was forced to bring another motion to compel discovery, which motion Mr. Zhou opposed ostensibly on behalf of N Corporation (*see* Dkt. #33-36); Mr. Zhou vigorously litigated, in N Corporation's name, an opposition to a motion for sanctions prompted by, *inter alia*, N Corporation's continued noncompliance with discovery orders (*see* Dkt. #37-39, 42-43, 46); and Mr. Zhou brought, again on behalf of N Corporation, a borderline frivolous motion to stay

---

[2]  To the extent Mr. Zhou may argue "that he lacked notice that the Court was basing sanctions on his negligence rather than bad faith, a district court is required to provide notice of the authority for sanctions, not the applicable legal standard." *Palmer* v. *Simon's Agency, Inc.*, No. 20-1516, — F. App'x —, 2020 WL 6387333, at *2 (2d Cir. Nov. 2, 2020) (summary order) (citing *Schlaifer Nance & Co., Inc.* v. *Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999)).

discovery due to pending criminal allegations against Plaintiff's counsel in another case (*see* Dkt #44-45).  Yet at no point during this time did Mr. Zhou ever speak to a single representative of N Corporation, much less ask for or review a representation agreement.  Thus, although the Court does not find that Mr. Zhou was motivated by an improper purpose, sanctions are still appropriate because of Mr. Zhou's recklessness in purporting to represent a client that he did not represent, and because his conduct — *i.e.*, failing to ascertain whether he actually represented a client — is not "zealous advocacy" on behalf of a client.  *Seltzer*, 227 F.3d at 40-41 (awarding sanctions without finding of bad faith where lawyer's tardiness violated court order, causing disruption and delay); *see also Palmer*, 2020 WL 6387333, at *1-2 (affirming sanctions award for lawyer's negligent failure to abide by local rules regarding procedures for filing motion to amend, without finding of bad faith); *In re Sanchez*, 790 F. App'x 293, 295 (2d Cir. 2019) (summary order) (affirming sanctions award for lawyer's failure to prosecute and failure to appear absent finding of bad faith); *Williams* v. *Lutheran Med. Ctr.*, 776 F. App'x 730, 731 (2d Cir. 2019) (summary order) (affirming sanctions award for lawyer's failure to diligently inform the court of scheduling conflicts without finding of bad faith).

In his affirmation, Mr. Zhou raises five arguments as to why he should not be held responsible for the sanctioned conduct.  *First*, he claims that he was initially informed both by his predecessor, Ms. He, and by his individual client, Mr. Hui, that his involvement in the case included representation of N

9

Corporation. (Zhou Aff. ¶¶ 1-2). But the Court has already explained why this excuse is insufficient:

> Even if it were true that Mr. Zhou initially believed that he represented N Corporation, Mr. Zhou's persistence in this misrepresentation for nearly five months would still amount to bad faith, because even after he was repeatedly ordered to produce discovery on behalf of N Corporation, he still failed to contact N Corporation, much less confirm that he represented N Corporation or that N Corporation was going to produce documents to comply with the Court's discovery orders. *Cf. Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 424 (S.D.N.Y. 2004) ("Lawyers and their clients need to communicate clearly and effectively with one another to ensure that litigation proceeds efficiently. When communication between counsel and client breaks down, conversation becomes 'just crossfire,' and there are usually casualties." (citation omitted)).

*Antolini*, 2020 WL 5089442, at *3. Indeed, Mr. Zhou concedes that he did not speak to anyone at N Corporation until May 26, 2020 (Zhou Aff. ¶ 5), the same day he was ordered to do so by the Court after it became clear that Mr. Zhou had not in fact spoken to anyone at N Corporation since appearing in this case (*see* Minute Entry for May 26, 2020).

*Second*, and relatedly, Mr. Zhou tries to excuse his failure to investigate his representation *vel non* of N Corporation by stating that at some unnamed time, Mr. Hui, acting as a corporate representative of N Corporation, authorized Mr. Zhou to represent N Corporation. (Zhou Aff. ¶ 3). As an initial matter, Mr. Hui is not and has never been N Corporation's representative. (*See id.* at ¶ 10). And even if Mr. Hui did initially tell Mr. Zhou that Mr. Hui was N Corporation's representative, that still does not explain or excuse Mr. Zhou's failure to investigate whether he did, in fact, represent N Corporation for months on end.

10

From Mr. Zhou's very first involvement in this case, he was aware that there were serious issues regarding communicating with N Corporation, and that these issues required immediate investigation. (*See* Hr'g Tr. 20-22). And Mr. Zhou concedes that his "review of the record of … discovery only showed that [Mr.] Hui only produced documents regarding Tipsy Shanghai and himself. Nowhere could [Mr. Zhou] find any corporate documents regarding N Corporation." (Zhou Aff. ¶ 3). Nevertheless, Mr. Zhou did not attempt to investigate whether Mr. Hui was N Corporation's authorized representative. Nor was he apparently concerned that, as N Corporation's putative counsel, he "did not have any contact information about N Corporation and who was in charge for the N Corporation." (*Id.* at ¶ 4). At some point, Mr. Zhou was informed by Mr. Hui that a representative from N Corporation would call him, and when that did not happen, Mr. Zhou *still* did not believe there was any reason to inform the Court that he did not represent N Corporation. (*Id.* at ¶ 5).[3] Despite all of the evidence Mr. Zhou possessed to the contrary, he continued to tell the Court that he was and had been producing N Corporation's responses to Plaintiff's discovery requests, and that he was in communication with N Corporation in so doing, including in response to a motion to compel discovery and a motion for sanctions, both arising out of N Corporation's continued failure to produce any discovery. (*See* Dkt. #34, 38,

---

[3]   Mr. Zhou's affirmation is extremely unclear about the chronology of his conversations with Mr. Hui about his purported representation of N Corporation and the production of discovery on behalf of N Corporation before Mr. Zhou finally spoke with someone from N Corporation on May 26, 2020. (*See* Zhou Aff. ¶¶ 3-5).

11

46).[4]  These continued misrepresentations ultimately led to the entry of sanctions against Defendants for failure to comply with discovery orders.  (*See* Dkt. #39).  *See also Antolini*, 2020 WL 5089442, at *2-3.

*Third*, Mr. Zhou argues that a potential conflict of interest in representing all three defendants in this matter somehow excuses his failure to determine whether he represented N Corporation at all.  (*See* Zhou Aff. ¶¶ 2, 8-9).  Mr. Zhou's suggestion that a conversation at the January 28, 2020 conference about his concern over a potential conflict of interest between and among the three defendants in this case excuses his misconduct is inapposite.  (*Id.* at ¶ 2).  In fact, it actually suggests why sanctions are proper here.  In response to Mr. Zhou's concern that there may be a potential conflict created by representing N Corporation along with the other two defendants, the Court explained to Mr. Zhou that:

> it's incumbent on counsel to let me know when, in the exercise of their professional judgment, they believe that there is a conflict of interest ... [,] if what you're asking me to do is to police the matter and figure out today whether you can represent all three clients, I just don't know because I don't have enough facts to tell me what the conflicts are.

(Hr'g Tr. 18).  The fact that Mr. Zhou failed to ascertain whether there was in fact a conflict in representing all three clients after raising this concern with

---

[4]  In addition to blaming Mr. Hui for his failure to investigate whether he ever represented N Corporation, Mr. Zhou also blames Mr. Hui for Defendants' failure to produce discovery related to N Corporation.  (Zhou Aff. ¶¶ 3-4).  However, Mr. Hui was not a corporate representative of N Corporation, nor could he produce discovery on behalf of N Corporation.  Thus, Mr. Hui's failure to produce evidence relating to N Corporation has no bearing on the Court's finding that Mr. Zhou's continued false representations to the Court about his role as N Corporation's counsel are sanctionable.

12

the Court at his first appearance — and being explicitly told by the Court that it was incumbent on him to investigate this issue — demonstrates that Mr. Zhou's delay of more than four months was reckless, or at least negligent. Not only did he fail to determine whether he actually represented N Corporation for months, but he also failed to investigate a potential conflict that he thought may exist from the outset of his representation.

*Fourth*, Mr. Zhou argues that the Court should nevertheless excuse his conduct because he has since returned payments he accepted from Mr. Hui for work on this matter. (Zhou Aff. ¶¶ 11-12). The Court takes no position on Mr. Zhou's decision to refund fees to Mr. Hui, but notes that the sanctioned conduct here is N Corporation's failure to comply with the Court's discovery orders, which conduct was caused by Mr. Zhou's (i) unexcused failure to ascertain which clients he represented, (ii) subsequent misrepresentations to the Court about his progress in complying with discovery orders, and (iii) misrepresentations to the Court about his communications with N Corporation. Mr. Zhou's decision to refund attorneys' fees paid by Mr. Hui has no bearing on his failure to perform his responsibility as an officer of the court with respect to his representation *vel non* of N Corporation.

*Fifth*, Mr. Zhou argues that he is not at fault, and instead N Corporation is responsible and should be sanctioned. (Zhou Aff. ¶ 10). However, N Corporation cannot be sanctioned for conduct it did not authorize or know about, and in which it did not participate. N Corporation is not responsible for Mr. Zhou's failure to investigate whether he represented N Corporation, nor can

13

it be sanctioned for failing to produce discovery when, by Mr. Zhou's own admission, he failed to communicate any discovery requests to the company until May 26, 2020, at the earliest.  (*Id.* at ¶¶ 5-6).

In sum, from his first involvement in this case, Mr. Zhou knew that N Corporation had produced no discovery, knew about prior issues communicating with N Corporation, and had reason to believe that his representation of N Corporation may constitute a conflict of interest. Nevertheless, for months, Mr. Zhou continued to assure the Court that he represented N Corporation, that he was in contact with N Corporation, and that he was working with N Corporation to comply with the Court's discovery orders.  As a result of this reckless behavior, Mr. Zhou delayed discovery for several months and forced the Court and the parties to waste time and resources on motions to compel discovery and to impose sanctions.  Because Mr. Zhou "negligently or recklessly fail[ed] to perform his responsibility as an officer of the court," *Palmer*, 2020 WL 6387333, at *1, the Court finds that sanctions should be imposed on him in order "that those who create unnecessary costs also bear them[,]" *Madison 92nd St. Assocs., LLC*, 2013 WL 5913382, at *12.

### B. Plaintiff's Request for Attorneys' Fees Is Granted in Part

The Court has reviewed Plaintiff's application for fees (Dkt. #42) and supplemental application for fees (Dkt. #57), as well as Defendants' opposition to Plaintiff's application for fees (Dkt. #46), and Defendants' opposition to

Plaintiff's supplemental application (Dkt. #65).  For the reasons discussed below, Court grants Plaintiff's request in part.

The Court granted sanctions in the form of requiring Defendants to pay the attorneys' fees that Plaintiff's counsel billed in connection with Plaintiff's letter motions for sanctions (*see* Dkt. #39), and Plaintiff seeks reimbursement for 11 hours of work on this issue.  (Dkt. #57).  "Sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person."  *Rice* v. *NBCUniversal Media, LLC*, No. 19 Civ. 447 (JMF), 2019 WL 3000808, at *6 (S.D.N.Y. July 10, 2019) (quoting *Weiss* v. *Weiss*, 984 F. Supp. 682, 686 (S.D.N.Y. 1997)).  Therefore, in consideration of Mr. Zhou's claim that he was initially told by Mr. Hui and Ms. He that he was representing N Corporation (Zhou Aff. ¶ 1), the Court does not believe it is proper to award attorneys' fees until Mr. Zhou received Plaintiff's third motion to compel on February 28, 2020 (Dkt. #33), at which time he should have diligently investigated N Corporation's outstanding discovery and his representation *vel non* of N Corporation.  Thus, the Court finds that attorneys' fees are warranted from after Plaintiff served his third motion to compel on February 28, 2020 (*id.*), up until June 17, 2020, at which time Mr. Zhou finally investigated and corrected his misrepresentation (Dkt. #52, 53), for a total of 5.6 hours (*see* Dkt. #57).  From that point forward, the costs incurred by Plaintiff in pursuing discovery from N Corporation are attributable to the normal, albeit woefully delayed, course of discovery.

When a party seeks attorney's fees, the "burden is on the fee applicant to produce satisfactory evidence ... that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum* v. *Stenson*, 465 U.S. 886, 896 n.11 (1984).  Plaintiff's counsel has not met his burden of establishing that $450 is a reasonable hourly rate.  Counsel's affirmation states that he "has a significant amount of experience regarding disability law and the ADA, having been counsel on numerous similar type cases." (Dkt. #42 at 4).  This statement is not supported by a single factual reference, and the motion papers are devoid of any concrete information related to counsel's education, length of practice, or reputation, including any information regarding his standard billing rate in similar matters.  The Court finds that $350 per hour is a reasonable rate for the straightforward nature of the case, for the basic nature of the legal work at issue, and based on rates found reasonable by other courts in this District in comparable situations.  *See, e.g.*, *Dancy* v. *McGinley*, 141 F. Supp. 3d 231, 238 (S.D.N.Y. 2015) ("While it seems clear that, for experienced attorneys, hourly rates of $300-400 are unremarkable in civil rights cases in the Southern District, some courts find that awards exceeding $400 per hour are only warranted in unusually difficult and complex cases" (citation, alteration, and quotation marks omitted)); *Rosado* v. *City of New York*, No. 11 Civ. 4285 (SAS), 2012 WL 955510, at *5 (S.D.N.Y. Mar. 15, 2012) (awarding $350 per hour for experienced litigator in civil rights case).

## CONCLUSION

For the reasons just enumerated, Plaintiff is awarded $1,960.00 in attorneys' fees to be paid by Mr. Zhou. The Clerk of Court is directed to terminate the motions at docket entries 37, 42, and 74.

SO ORDERED.

Dated:   December 17, 2020
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge